UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re | No. 1:19-cv-00520-DAD |
| GREGORY JOHN te VELDE, | |
| Debtor. | ORDER DENYING DEFENDANT'S MOTION TO WITHDRAW REFERENCE |
| RANDY SUGARMAN, Trustee in Bankruptcy of the Estate of GREGORY JOHN te VELDE, | (Doc. No. 1) |
| Plaintiff | |
| v. | |
| IRZ CONSULTING, LLC, | |
| Defendant. | |

This matter is before the court on a motion to withdraw reference to the bankruptcy court brought on behalf of defendant IRZ Consulting, LLC's ("IRZ"). (Doc. No. 1.) A hearing on the motion was held on June 4, 2019. Attorney John MacConaghy appeared on behalf of plaintiff Randy Sugarman, Trustee in Bankruptcy of the Estate of Gregory John te Velde ("Trustee"). Attorney Sanford Landress appeared on behalf of defendant IRZ. Having considered the parties' briefs and the arguments of counsel, and for the reasons set forth below, defendant's motion to withdraw reference will be denied.

## BACKGROUND

On September 30, 2015, Gregory John te Velde ("Debtor") and IRZ entered into an agreement for preliminary planning services related to the construction of a large dairy facility in Oregon known as the "Lost Valley Farm" or the "Willow Creek Dairy" (the "Project"). (Doc. No. 1 at 7.) On November 17, 2015, Debtor and IRZ entered into a second agreement for project management services relating to the Project. (*Id.*)

Shortly after substantial dairy operations commenced, large amounts of liquid and solid dairy waste backed up at the facility, overflowed, and were released onto bare soil. (Doc. No. 11 at 7–8.) As a result, the Oregon Department of Agriculture ordered a shutdown of the dairy, a premature liquidation of the dairy herd, and ultimately, the sale of the Lost Valley Farm to a third party. (*Id.*)

Including both agreements, IRZ billed Debtor a total of approximately $1,250,000 for its services, of which Debtor paid approximately $850,000. (*Id.* at 6.) Debtor did not pay the remaining $350,000 billed by IRZ. (*Id.* at 8.) On September 25, 2017, IRZ filed a Construction Claim of Lien for the unpaid contract balance. (Doc. No. 1 at 8.) On November 2, 2017, IRZ commenced a lien foreclosure action in the Morrow County, Oregon Circuit Court. (*Id.*)

While the lien foreclosure action was still pending, Debtor filed for Chapter 11 bankruptcy in the U.S. Bankruptcy Court for the Eastern District of California on April 26, 2018. (Doc. No. 11 at 8.) On June 4, 2018, IRZ filed a proof of claim in the bankruptcy case, asserting a claim in the amount of $347,057.56 for unpaid bills for project management services it had performed. (Doc. No. 1 at 8.)

On September 21, 2018, plaintiff Randy Sugarman was appointed Chapter 11 Trustee of Debtor's bankruptcy case ("the Trustee" or "plaintiff") and succeeded to all causes of action formerly held by Debtor. (Doc. No. 11 at 8.) On March 8, 2019, the Trustee commenced an adversary proceeding against IRZ in the bankruptcy court, bringing causes of action for: (1) objection to proof of claim; (2) counterclaim for breach of contract; (3) counterclaim for negligence; and (4) avoidance of fraudulent transfer or obligation. (*See* Doc. No. 12-1.)

/////

On April 15, 2019, IRZ responded with a demand for jury trial and the motion to withdraw reference now pending before this court. (Doc. No. 1.) The Trustee filed opposition to that motion and a request for judicial notice on May 21, 2019.[1] (Doc. Nos. 11, 12.) IRZ filed its reply on May 23, 2019. (Doc. No. 13.)

## LEGAL STANDARD

District courts have original jurisdiction over "all civil proceedings arising under title 11," which is the Bankruptcy Code, as well as over cases "arising in or related to cases under title 11." 28 U.S.C. § 1334(a)–(b). However, district courts may refer these civil proceedings and cases to the bankruptcy judges in the district. 28 U.S.C. § 157(a). In the Eastern District of California, all cases and proceedings arising in or related to a bankruptcy case are automatically referred to the Bankruptcy Court. Local Gen. Orders 182, 223.

There are two circumstances, however, where automatic reference to the bankruptcy court is withdrawn. First, withdrawal is mandatory "if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce." 28 U.S.C. § 157(d). That is, withdrawal is required "in cases requiring material consideration of non-bankruptcy federal law." *Sec. Farms v. Int'l Bhd. of Teamsters*, 124 F.3d 999, 1008 (9th Cir. 1997).

Second, withdrawal is permissive, "in whole or in part . . . for cause shown." 28 U.S.C. § 157(d). "In determining whether cause exists, a district court should consider the efficient use of judicial resources, delay and costs to the parties, uniformity of bankruptcy administration, the prevention of forum shopping, and other related factors." *Sec. Farms*, 124 F.3d at 1008 (citing *In re Orion Pictures Corp.*, 4 F.3d 1095, 1101 (2d Cir. 1993)).

---

[1] The court grants the Trustee's unopposed request for judicial notice. (Doc. No. 12.) Therein, the Trustee requests that the court take judicial notice of his complaint and accompanying exhibits filed against IRZ in the Eastern District of California Bankruptcy Court. (*Id.*) These documents are judicially noticeable. *See Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006) (holding that "court filings and other matters of public record" are subject to judicial notice); *see also* Fed. R. Evid. 201(b) (noting the court may judicially notice facts not subject to reasonable dispute that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned").

3

In considering permissive withdrawal, district courts should first evaluate whether the matter is "core" or "non-core," since this evaluation bears on the issues of efficiency and uniformity, and also determines the relevance of the parties' jury trial rights. *See In re Orion Pictures Corp.*, 4 F.3d at 1101. Section 157 classifies matters as either "core proceedings," in which the bankruptcy court may enter appropriate orders and judgments, or "non-core proceedings," which the bankruptcy court may hear but only submit proposed findings and fact and conclusions of law to the district court for *de novo* review. *Sec. Farms*, 124 F.3d at 1108 (quoting 28 U.S.C. § 157). "Actions that do not depend on bankruptcy laws for their existence and that could proceed in another court are considered 'non-core.'" *Id.*

The burden of persuasion is on the party seeking withdrawal of the reference. *In re Tamalpais Bancorp*, 451 B.R. 6, 8 (N.D. Cal. 2011) (citation omitted); *FTC v. First Alliance Mortg. Co.*, 282 B.R. 894, 902 (C.D. Cal. 2001) (citation omitted).

## ANALYSIS

IRZ moves this court for an order under 28 U.S.C. § 157(d) withdrawing its reference of the adversary proceeding to the bankruptcy court. (Doc. No. 1.) Because IRZ makes no argument that withdrawal is mandatory under 28 U.S.C. § 157(d), the court construes the motion as one for permissive withdrawal. IRZ advances two interrelated arguments in support of its motion for withdrawal. First, it contends that pursuant to the decision in *Stern v. Marshall*, 564 U.S. 462 (2011), a bankruptcy court cannot enter a final judgment on state-law counterclaims that will not be resolved in the process of ruling on a creditor's proof of claim. (*Id.* at 14.) Second, IRZ contends that it has a right to a jury trial and does not consent to having the trial conducted by a bankruptcy judge. (*Id.* at 15–16.) Although both parties present these arguments as distinct

/////
/////
/////
/////
/////
/////

issues, the court will consider them in tandem below.[2]

In *Stern v. Marshall*, the Supreme Court considered a constitutional challenge to the statutory designation of a particular claim as a core proceeding. There, the debtor had filed a common-law counterclaim for tortious interference against a creditor to the estate. *Stern*, 564 U.S. at 475. Pursuant to § 157(b)(2)(C), "counterclaims by the estate against persons filing claims against the state" are defined as a core proceeding, thereby authorizing the bankruptcy court to adjudicate the claim to final judgment. *Id.* The respondent in *Stern* objected that Congress had violated Article III of the Constitution by vesting the power to adjudicate the tortious interference counterclaim in the bankruptcy court. *Id.* at 471. The Supreme Court agreed, holding that, even though bankruptcy courts are statutorily authorized to enter final judgment on core claims, they lack the constitutional authority to enter final judgment on certain of those core claims, namely, state law counterclaims that are not necessarily resolved in the process of ruling on a creditor's proof of claim (so-called "*Stern*" claims). *Id.* at 503*; see also In re Deitz*, 760 F.3d 1039 (9th Cir. 2014).

Here, IRZ argues that the Trustee's *Stern* claims predominate over the non-*Stern* claims that may be adjudicated to final judgment by the bankruptcy court. (Doc. No. 1 at 15.) IRZ characterizes the Trustee's first and fourth claims, objecting to the proof of claim and seeking to

---

[2] In *Stern* the Supreme Court did not explicitly address the right to a jury trial, but instead addressed a bankruptcy court's constitutional authority to enter final judgment with respect to certain claims in light of Article III. In doing so, however, the Supreme Court construed its prior decisions in *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33 (1989), *Langenkamp v. Culp*, 498 U.S. 42 (1990), and *Katchen v. Landy*, 382 U.S. 323 (1966), all of which address the right to a jury trial. *See Stern*, 564 U.S. at 492–99; *see also id.* at 517 (Breyer, J., dissenting) ("As we have recognized, the jury trial question and the Article III question are highly analogous."); *Granfinanciera*, 492 U.S. at 53 ("[T]he question whether the Seventh Amendment permits Congress to assign its adjudication to a tribunal that does not employ juries as factfinders requires the same answer as the question whether Article III allows Congress to assign adjudication of that cause of action to a non-Article III tribunal."); *In re Bellingham Ins. Agency, Inc.*, 702 F.3d 553, 563 (9th Cir. 2012) ("*Stern* fully equated litigants' Seventh Amendment right to a jury trial in federal bankruptcy proceedings with their right to proceed before an Article III judge."), *aff'd sub nom. Exec. Benefits Ins. Agency v. Arkison*, 573 U.S. 25 (2014); *In re LLS Am., LLC*, No. CV-12-340-RMP, 2012 WL 5285654, at *3 (E.D. Wash. Oct. 25, 2012) ("In light of *Stern*, the right to a jury trial on a claim brought by the estate against a creditor who has filed a proof of claim turns on whether it is necessary to resolve the estate's claim as part of ruling on the creditor's proof of claim.").

avoid fraudulent transfer, as "relatively minor claims" that "are not at the heart of this proceeding." (*Id.*) According to IRZ, the Trustee's second and third causes of action for breach of contract and negligence, in contrast, are *Stern* state-law counterclaims that will not be resolved in the process of ruling on defendant's proof of claim. (Doc. No. 13 at 6.) IRZ argues that this is so because its proof of claim and the Trustee's state-law counterclaims do not arise out of the same set of operative facts: while IRZ's proof of claim is based on approximately $350,000 in unpaid bills for services rendered, the Trustee's counterclaims are based on alleged complex design and engineering defects which purportedly resulted in $18.8 million in damages being incurred. (*Id.*)

In opposing the pending motion, the Trustee argues that IRZ's proof of claim is inextricably bound with the counterclaims for breach of contract and the negligent performance thereof. (Doc. No. 11 at 11–13.) According to the Trustee, the facts related to IRZ's proof of claim and the Trustee's counterclaims are the same: "did IRZ competently perform professional services for the debtor and who is liable to whom for those professional services?" (*Id.* at 13.)

That the counterclaims for breach of contract and negligence are merely related to the bankruptcy case is not sufficient to establish that they are properly adjudicated to final judgment by the bankruptcy court absent consent: "the question is whether the action at issue stems from the bankruptcy itself or would necessarily be resolved in the claims allowance process." *Stern*, 564 U.S. at 499. In other words, the bankruptcy court may adjudicate counterclaims where it is not required to make factual findings or legal determinations beyond those it must make in passing on the objections to the proof of claim. *See id.* at 497; *see also In re Lehman Bros. Holdings Inc.*, 480 B.R. 179, 190 (S.D.N.Y. 2012) (explaining that for a state law claim to be necessarily resolved in the claims allowance process, "a plaintiff must demonstrate that each factual and legal element of its claim will be decided in the claims allowance process such that after the process, nothing remains for adjudication in a plenary suit") (citation and quotation marks omitted).

Here, the process of adjudicating IRZ's proof of claim for the balance of the contract price would appear likely to resolve at least some elements of the Trustee's breach of contract

6

counterclaim, because the bankruptcy court must necessarily determine if a contract existed and whether there was a breach of that contract as a basis for disallowing the claim. However, with respect to damages, the Trustee alleges not only general damages for the amount of the contract price paid, but also consequential damages as a direct, foreseeable, and proximate cause of IRZ's alleged breach of contract. (*See* Doc. No. 12-1 at 12.) The Trustee claims that the net result of IRZ's breach of contract is that, over time, millions of gallons of dairy waste backed up in the lagoons, leading the Oregon Department of Agriculture to file administrative and judicial proceedings against the Debtor and the Estate to revoke the Lost Valley Farm's permit and compel a decommissioning of the dairy. (*Id.* at 13.) According to the Trustee, these regulatory enforcement actions and the revocation of the permit forced the shutdown of all revenue-producing dairy operations, liquidation of the associated dairy herd at depressed auction prices, extensive remediation of the dairy waste, and ultimately the sale of the Lost Valley Farm at a significant loss, all totaling more than $18.8 million in consequential damages being suffered. (*Id.*) Because resolution of the Trustee's breach of contract claim in this respect would require the bankruptcy court to make additional factual findings regarding whether such consequential damages were reasonably foreseeable—coupled with the fact that the $18.8 million in damages dwarfs IRZ's relatively small claim for $350,000 in unpaid invoices—the court concludes that the Trustee's breach of contract counterclaim is beyond the scope of a core proceeding and would not necessarily be fully resolved in the process of the bankruptcy court ruling on IRZ's proof of claim.

Likewise, the Trustee's negligence counterclaim also appears to be a non-core proceeding. The negligence counterclaim poses factual and legal questions that the bankruptcy court would not necessarily resolve in ruling on IRZ's proof of claim, including whether IRZ owed a duty to perform its services "in a competent manner, and to exercise the diligence, care, and skill in the performance of such services, consistent with the skill, diligence, and expertise of other licensed contractors providing wastewater management and irrigation and large dairy construction services in the Pacific Northwest" and whether IRZ breached that duty of care. (Doc. No. 12-1 at 15–16.) Moreover, the Trustee's complaint alleges, among other negligent acts and omissions, that IRZ

7

failed to prepare an adequate or competent preliminary and/or final site plan, grading plan, infrastructure plan, effluent water flow line plan, lagoon design plan, and irrigation plan. (*See* Doc. No. 12-1 at 17.) Yet, the declaration of IRZ's Director of Construction Wayne Downey, filed as an exhibit to defendant's reply, states that IRZ did not do the engineering and design work for the Project, and names five professional entities that actually performed the work in question. (*See* Doc. No. 14-3.) IRZ argues that if the Trustee does not join those five professional entities as defendants, IRZ will do so by means of a third-party complaint. (Doc. No. 13 at 10.) Thus, IRZ advises the court that this matter will likely soon be a $20 million construction defect case involving no fewer than six professional entities, some of whom are not creditors in the bankruptcy case and whose claims have nothing to do with bankruptcy law. (*Id.*) The argument is persuasive. In sum, the court is unconvinced that each factual and legal element of the Trustee's counterclaims for breach of contract and negligence will necessarily be resolved in the process of ruling on IRZ's proof of claim since quite the opposite appears to be the case.

The Trustee next argues that IRZ impliedly consented to the bankruptcy court's adjudication of its state law counterclaims by filing a proof of claim in the bankruptcy action, thereby waiving any right to a jury trial.[3] (Doc. No. 11 at 10–11, 13.) The Trustee's reliance on the decision in *Wellness International Network, Ltd. v. Sharif*, ___ U.S. ___, 135 S. Ct. 1932 (2015) in support of this argument is misplaced. There, the Supreme Court held that bankruptcy courts may adjudicate *Stern* claims when the parties knowingly and voluntarily consent thereto, but stopped short of determining whether the respondent's actions in that case evinced the requisite knowing and voluntary consent. *Wellness Int'l*, 135 S. Ct. at 1948–49 ("[D]etermining whether Sharif in fact consented to the Bankruptcy Court's adjudication of count V of Wellness' adversary complaint . . . would require a deeply factbound analysis of the procedural history unique to this protracted litigation. . . . [W]e leave it to the Seventh Circuit to decide on remand whether Sharif's actions evinced the requisite knowing and voluntary consent[.]").

---

[3] Pursuant to 28 U.S.C. § 157(e), a non-Article III bankruptcy judge may conduct a jury trial only when "specially designated to exercise such jurisdiction by the district court and with the express consent of all the parties."

The Trustee next relies on a line of Supreme Court decisions—namely *Katchen v. Landy*, 382 U.S. 323 (1966), *Langenkamp v. Culp*, 498 U.S. 42 (1990), and *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33 (1989)—to argue that the filing of a proof of claim constitutes a party's consent to the bankruptcy court's adjudication of the claim. (Doc. No. 11 at 11.) Again, this proposition is based upon an overly broad reading of those decisions. As stated in *Stern*, the decisions in *Katchen* and *Langenkamp* recognized the authority of a bankruptcy court to adjudicate a preference action[4] against a creditor who had filed a proof of claim against the bankruptcy estate because the resolution of the preference claim was an integral part of the claims-allowance process. *Stern*, 564 U.S. at 495–97. In *Katchen*, the Supreme Court concluded that it was not possible for the bankruptcy referee to rule on the creditor's proof of claim without first resolving the voidable preference issue. 382 U.S. at 329–30, 332–33. It was in this limited context that the court stated that "he who invokes the aid of the bankruptcy court by offering a proof of claim and demanding its allowance must abide the consequences of that procedure." *Id.* at 333 n.9. Likewise, in *Langenkamp*, the Supreme Court concluded that a preferential transfer claim could be heard in a bankruptcy court when the allegedly favored creditor has filed a claim, because then "the ensuing preference action by the trustee become[s] integral to the restructuring of the debtor-creditor relationship." 498 U.S. 42, 44 (1990).

In contrast, in *Granfinanciera*, the Supreme Court found that fraudulent conveyance claims were "quintessentially suits at common law that more nearly resemble state law contract claims brought by a bankrupt corporation to augment the bankruptcy estate than they do creditors' hierarchically ordered claims to a pro rata share of the bankruptcy res." *Stern*, 564 U.S. at 492 (quoting *Granfinanciera*, 492 U.S. at 56). In *Stern*, the Supreme Court analogized the state law tortious interference counterclaim before it to the fraudulent conveyance claim in *Granfinanciera* and held that the counterclaim was a "private rights" claim—that is, a matter of

---

[4] As explained by the Supreme Court in *Stern*, "[a] voidable preference claim asserts that a debtor made a payment to a particular creditor in anticipation of bankruptcy, to in effect increase that creditor's proportionate share of the estate. The preferred creditor's claim in bankruptcy can be disallowed as a result of the preference, and the amounts paid to that creditor can be recovered by the trustee." 564 U.S. at 496.

9

the liability of one individual to another, neither deriving from nor depending upon any agency regulatory regime—that was required to be adjudicated by an Article III court. *Id.* at 489–96.

Here, the court finds that the Trustee's causes of action for breach of contract and negligence are "private rights" state-law claims that will not necessarily be resolved in the claims allowance process before the bankruptcy court. IRZ's filing of a proof of claim in the bankruptcy proceeding therefore did not waive its right to a jury trial. *See id.* at 495 (rejecting the contention that respondent's filing of a proof of claim provided the bankruptcy court the authority to adjudicate debtor's state law counterclaim); *In re Aichinger*, No. 15-cv-00188-RBJ, 2015 WL 790536, at *2 (D. Colo. Feb. 23, 2015) (holding that filing of proof of claim did not waive jury trial right because "[r]esolution of the trustee's action does not aid the bankruptcy court in determining whether to permit [creditor]'s claim"); *In re LLS Am., LLC*, No. CV-12-340-RMP, 2012 WL 5285654, at *3 (E.D. Wash. Oct. 25, 2012) (holding that filing of proof of claim did not extinguish the party's right to jury trial because ruling on creditor's proof of claim would not necessarily resolve the estate's claim).

Nonetheless, and even though the court has concluded that IRZ did not waive its right to a jury trial, a "valid right to a Seventh Amendment jury trial in the district court does not meant the bankruptcy court must instantly give up jurisdiction and that the action must be transferred to the district court." *In re Healthcentral.com*, 504 F.3d 775, 788 (9th Cir. 2007). Rather, the bankruptcy court may retain jurisdiction over the action with respect to pretrial matters. *Id.* Moreover, the Supreme Court has held that *Stern* claims can be resolved under the procedures that apply to non-core proceedings set forth in § 157(c)(1). *Executive Benefits Insurance Agency v. Arkison*, 574 U.S. 25, 37 (2014). Thus, a bankruptcy court may submit proposed findings of fact and conclusions of law with regard to *Stern* claims to the district court for its *de novo* review. *Id.* at 38. The undersigned notes that the Trustee here has argued that, even if the court concludes that the bankruptcy court lacks authority to enter final judgment, this court should permit the bankruptcy court to issue proposed findings of fact and conclusions of law for its *de novo* review. (Doc. No. 11 at 15).

/////

Given the bankruptcy court's involvement with this action since April 2018, and its familiarity with the complex facts at issue in this case—including the failures of the Lost Valley Farm, the efforts by the debtor to mitigate those failures, and the environmental sanctions levied by the State of Oregon—the court finds that judicial economy weighs against withdrawing the reference at this time.  The bankruptcy judge is familiar with and has already considered some of the issues in this case, while this district court has no familiarity with either the underlying bankruptcy or the adversary proceeding.  The bankruptcy court's continued handling of pretrial matters is unlikely to add unnecessary delays and costs to the parties given the judicial savings stemming from the bankruptcy court's handling of those matters in the first instance.  *See Ferlmann v. Prasad*, No. 2:15-cv-2229-JAM-EFB, 2016 WL 427019 (E.D. Cal. Feb. 4, 2016) (noting that the district court's review of proposed findings of fact and conclusions of law "is not only economical" but also "immensely helpful to the district court in rendering its decisions in bankruptcy cases"); *In re Heller Ehrman LLP*, 464 B.R. 348, 359–60 (N.D. Cal. 2011) ("If this Court ultimately is called upon to make a final judgment in this action, it is not clear that such a procedure will cause unnecessary delay and costs, particularly given the efficiencies of having the bankruptcy court deal with the issues in the first instance.").  In contrast, withdrawing reference at this time would almost certainly result in extended delay.  The United States District Court for the Eastern District of California is well-known for having long labored under one of the heaviest caseloads in the federal courts of this country, and the crisis only stands to worsen with the impending taking of senior status by two district judges.[5]

Finally, the bankruptcy court's retention of this matter will serve to respect the Supreme Court's observation that the decision in *Stern* should not "meaningfully change[] the division of labor" in the bankruptcy statute between the bankruptcy and district courts.  564 U.S. at 502.  At this time, the ultimate need for adjudication by this district court is speculative:  resolution of the bankruptcy issues as well as the entangled *Stern* claims may be advanced through discovery, by

---

[5] *See* Letter from District Judges of the Eastern District of California to Congress (June 19, 2018), https://content.govdelivery.com/attachments/USFEDCOURTS/2018/07/10/file_attachments/1036786/Judgeship%2BLetter%2BJune%2B2018.pdf.

11

way of settlement, or by non-dispositive motion practice before the bankruptcy court, before the matter is ripe for trial or other final disposition on the *Stern* claims.  In any event, deferring withdrawal of reference at this time and allowing the bankruptcy court to supervise discovery, rule on non-dispositive motions, and, perhaps, issue findings and recommendation for *de novo* consideration by this court as to dispositive motions, will winnow the issues that require the attention of this court prior to trial, should that be necessary, and entry of final judgment.

## CONCLUSION

For the foregoing reasons, IRZ's motion to withdraw reference (Doc. No. 1) is denied at this time pending further proceedings before the bankruptcy court and without prejudice to renewal of the motion at such time as withdrawal of the reference to the bankruptcy court would aid in the efficient resolution of this matter in a manner consistent with the conservation of scarce judicial resources.

IT IS SO ORDERED.

Dated: **August 14, 2019**                                     /s/ Dale A. Drozd
                                                                            UNITED STATES DISTRICT JUDGE