MILLER NASH LLP
Kyle D. Sciuchetti, Admitted Pro Hac Vice
 *kyle.s@millernash.com*
Bernard Kornberg, CSB No. 252006
 *Bernie.kornberg@millernash.com*
Benjamin P. Tarczy, CSB No. 308367
 *benjamin.tarczy@millernash.com*
1140 SW Washington St, Ste 700
Portland, Oregon 97204
Telephone:    503.224.5858
Facsimile:    503.224.0155

MCCORMICK, BARSTOW, SHEPPARD,
WAYTE & CARRUTH LLP
Hagop T. Bedoyan, CSB No. 131285
7647 North Fresno Street
Fresno, California 93720
Telephone: 559.433.1300
Facsimile: 559.433.2300

Attorneys for IRZ Consulting, LLC and Lindsay Corporation

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

FRESNO DIVISION

| | |
|---|---|
| In re<br><br>GREGORY JOHN TE VELDE,<br><br>Debtor. | Case No. 1:19-cv-00520-KES<br><br>Bankruptcy Case No. 18-11651-A-11<br><br>Bankruptcy Adv. Pro. No. 19-01033-B |
| RANDY SUGARMAN, CHAPTER 11 TRUSTEE,<br><br>Plaintiff,<br><br>v.<br><br>IRZ CONSULTING, LLC et al.;<br><br>Defendants.<br><br>AND RELATED CROSS-ACTIONS | **IRZ CONSULTING, LLC'S OBJECTION TO THE BANKRUPTCY COURT'S REPORT AND RECOMMENDATION REGARDING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND/OR PARTIAL SUMMARY JUDGMENT**<br><br>Judge: Hon. Kirk. E Sheriff |

## TABLE OF CONTENTS

I. INTRODUCTION ........................................................................................................... 4
II. PERTINENT FACTUAL HISTORY ........................................................................... 5
    A.    Lost Valley Farm ................................................................................................ 5
    B.    The Bankruptcy .................................................................................................. 8
    C.    The Adversary Proceeding ................................................................................ 9
III. ARGUMENT .................................................................................................................. 10
    A.    The Second Cause of Action for Breach of Contract ..................................... 10
    B.    The Third Cause of Action for Negligence .................................................... 14
IV. CONCLUSION .............................................................................................................. 19

## TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Alexie v. United States*,
 2009 WL 160354 (D. Alaska Jan. 21, 2009) ............................................................................ 16

*Escobar v. AirBus Helicopters SAS*,
 2016 WL 6024441 (D. Haw. Oct. 4, 2016) ............................................................................... 16

*John Reiner & Co. v. United States*,
 325 F.2d 438 (Ct. Cl. 1963) ..................................................................................................... 13

**State Cases**

*Abraham v. T. Henry Const., Inc.*,
 230 Or. App. 564 (2009), *aff'd on other grounds,* 350 Or. 29 (2011) .................................... 16

*Abraham v. T. Henry Const., Inc.*,
 350 Or. 29 (2011) ..................................................................................................................... 19

*Bagley v. Mt. Bachelor, Inc.*,
 356 Or. 543 (2014) ................................................................................................................... 19

*Certain Underwriters at Lloyd's London v. TNA NA Mfg., Inc.*,
 372 Or. 64 (2024) ..................................................................................................................... 19

*Conway Constr. Co. v. City of Puyallup*,
 197 Wash. 2d 825 (2021) ......................................................................................................... 13

*Georgetown Realty v. The Home Ins. Co.*,
 313 Or. 97 (1992) ..................................................................................................................... 16

*Holland Devs., Ltd. v. Manufacturers Consultants, Inc.*,
 81 Or. App. 57 (1986) .............................................................................................................. 12

*Livingston v. Metro. Pediatrics, LLC*,
 234 Or. App. 137 (2010) .......................................................................................................... 18

**Rules**

Federal Rule of Bankruptcy Procedure 9033 ................................................................................. 5

Federal Rule of Evidence 801 ...................................................................................................... 17

**Other Authorities**

2 Bruner & O'Connor Construction Law § 5:268 ....................................................................... 13

Miller Nash LLP
Attorneys At Law
Portland

- 3 -    OBJECTION TO REPORT AND RECOMMENDATION

4902-7405-2233.4

Defendant IRZ Consulting, LLC, aka IRZ Construction Division, LLC ("IRZ"), pursuant to Federal Rule of Bankruptcy Procedure 9033(b), submits its objections (the "Objection") to the Report and Recommendation on Motion For Summary Judgment and/or Motion For Partial Summary Judgment (the "Report and Recommendation") issued by the bankruptcy court and filed in this matter as Docket # 59.[1]

## I. INTRODUCTION

Defendant IRZ Consulting, LLC ("IRZ") submits this Objection to the Report and Recommendation arising out of IRZ's Motion for Summary Judgment and/or Partial Summary Judgment (the "Motion for Summary Judgment") as to the first amended complaint of Randy Sugarman, Chapter 11 Trustee ("Trustee"). IRZ objects to the Bankruptcy Court's denial of summary judgment on the Second Cause of Action for Breach of Contract and the Third Cause of Action for Negligence. While the Bankruptcy Court correctly recommended summary judgment in favor of Lindsay Corporation and on the claims for Objection to Claim and Avoidance of Fraudulent Transfer, it erred in finding disputed material facts regarding IRZ's remaining liabilities.

Regarding the breach of contract claim, it is undisputed that the Debtor Gregory John Te Velde ("Debtor") breached his contract with IRZ due to a lack of funding and subsequently completed the project without IRZ's involvement. IRZ presented undisputed facts to show that Debtor himself completed the waste management project. IRZ cannot be held liable for contractual duties after Debtor breached his contract with IRZ. Further, the Bankruptcy Court failed to apply the controlling legal standard set forth in *Shelter Products*, which provides that a contractor terminated for convenience cannot be held liable for defects without being afforded an opportunity to cure. IRZ was not afford any opportunity to inspect or cure alleged deficiencies. Finally, the Bankruptcy Court misconstrued the Services Agreement, which was a time-and-materials contract where IRZ acted as an agent under the Debtor's direction. Because the Debtor

---

[1] Pursuant to the stipulation of the Parties, the Bankruptcy Court extended the deadline under Federal Rule of Bankruptcy Procedure 9033(b) for all parties to object to the Report and Recommendation to January 21, 2026. Adv. Dkt. # 954.

never requested the specific engineering services at issue nor paid for them, IRZ cannot be in breach for failing to provide them.

On the negligence cause of action, the Trustee has failed to establish a duty of care independent of the contract, effectively attempting to recast a contractual dispute as a tort claim without the necessary legal basis. Moreover, the Trustee has provided no admissible evidence, relying solely on inadmissible hearsay, to support the allegation that IRZ performed negligently. Finally, the Bankruptcy Court erred by not enforcing the clear limitation of liability clause in the Services Agreement, which caps IRZ's potential liability at $500,000.

IRZ respectfully requests that this Court modify the Report and Recommendation to grant summary judgment on these remaining issues.

## II.  PERTINENT FACTUAL HISTORY

**A.    Lost Valley Farm**

In 2015, Debtor was the owner of two large dairy farms in Tulare County. Defendants' Statement of Undisputed Material Facts ("SUMF") # 1 [Adv. Dkt. # 835]. For many years, Debtor also ran a dairy farm on leased land at Three Mile Canyon not far from where he would eventually find land to move his dairy operation. SUMF # 2 [Adv. Dkt. # 835]. In 2015, Debtor started negotiations into acquiring "Lost Valley Farm," a 7,288 acre parcel near Boardman, Oregon. SUMF # 1 [Adv. Dkt. # 835]. Debtor's interest was to purchase and develop Lost Valley Farm into a dairy farm with approximately 30,000 dairy cows. SUMF # 1, Adv. Dkt. # 835 [Adv. Dkt. # 835]. Debtor intended to build the same dairy design at the Boardman property as he operated at Three Mile. SUMF # 2 [Adv. Dkt. # 835].

In September of 2015, as part of Debtor's leadup to the purchase of Lost Valley Farm, IRZ and Debtor entered into negotiations to retain IRZ to assist in the development of Lost Valley Farm. SUMF # 3, Adv [Adv. Dkt. # 835]. As part of these negotiations, the parties discussed IRZ acting as general contractor on the project, but the proposal was rejected by Debtor as a result of the cost to retain IRZ as general contractor. SUMF # 4 [Adv. Dkt. # 835]. Ultimately, IRZ and Debtor entered into a more limited Work Order dated September 30, 2015 (the "Work Order"). SUMF # 5 [Adv. Dkt. # 835]. Under the Work Order, IRZ agreed to provide certain preliminary

drawings and estimates for the proposed Lost Valley Farm project and serve in the limited capacity as Project Manager. SUMF # 6 [Adv. Dkt. # 835].

On November 12, 2015, Debtor purchased Lost Valley Farm for $65 million, payable by $10 million down and a purchase money note and deed of trust for the remainder. SUMF # 8 [Adv. Dkt. # 835].

On November 17, 2015, Debtor and IRZ entered into the Agreement Between Owner and ICD for Services dated November 17, 2015 the ("Services Agreement"). SUMF # 9, [Adv. Dkt. # 835]. Under the Services Agreement, IRZ offered to act as "Project Manager" to perform review, oversight, design, and engineering tasks as requested, with Debtor to act as General Contractor for the project. SUMF # 10 [Adv. Dkt. # 835]. Notably, the Services Agreement provides that Debtor will act as general contractor and that IRZ is not responsible for the quality of work performed by sub-contractors. SUMF # 12 [Adv. Dkt. # 835].

Over the course of the project, Debtor acted as general contractor, designing the dairy, retaining the services of several subcontractors for work to be performed, and overseeing and approving the construction of the dairy. SUMF # 18 [Adv. Dkt. # 835]. IRZ did not contract with any subcontractors on the project. SUMF # 19 [Adv. Dkt. # 835]. During construction, Debtor never requested IRZ to provide engineering work or design services on the dairy nor did IRZ engage in such work. Nor were any of IRZ's licensed engineers ever engaged to perform any work on the project. SUMF # 21-22. [Adv. Dkt. # 835].

Lost Valley Farm ran into logistical and financial difficulties arising out of legal disputes between Debtor and the Oregon Department of Agriculture. SUMF # 26 [Adv. Dkt. # 835]. Debtor was funding the construction of the Lost Valley Farm from the revenue of his California dairy operations. SUMF # 27 [Adv. Dkt. # 835]. However, the price of milk was historically low and he lacked sufficient profits to maintain the construction. SUMF # 27 [Adv. Dkt. # 835].

Further, Debtor had personal difficulties that impacted the business. Debtor was addicted to methamphetamines and was frequently high when he was operating his businesses. SUMF # 28 [Adv. Dkt. # 835]. Debtor admitted that his drug addiction to methamphetamines began when he was in college and continued for many years through in-treatment programs in 2004, 2015 and

2018. SUMF # 28 [Adv. Dkt. # 835]. Debtor admitted to continuing his methamphetamine use after filing for bankruptcy and using methamphetamine weekly. SUMF # 29 [Adv. Dkt. # 835]. Debtor admitted that he did not segregate his business and personal books, and that all personal expenses were paid directly out of the dairy checking accounts. SUMF # 30 [Adv. Dkt. # 835]. Debtor admitted that his drug use "has negatively impaired [his] health, family and business." SUMF # 31 [Adv. Dkt. # 835]. He also frequently withdrew cash directly from the dairy checking accounts for the sole purpose of gambling, generally at the Tachi Palace Hotel and Casino. SUMF # 32 [Adv. Dkt. # 835]. Debtor's gambling continued even after he filed for Chapter 11 bankruptcy, where he lost $2,000 to $7,000 a month. SUMF # 33 [Adv. Dkt. # 835].

Debtor neglected his duties as general contractor, resulting in delays to the project. SUMF # 34 [Adv. Dkt. # 835]. Debtor further failed to pay IRZ for its services, along with failing to pay many subcontractors for their work. SUMF # 35-36 [Adv. Dkt. # 835]. IRZ was not able to perform its duties to sequence the work of subcontractors when the subcontractors increasingly refused to show up to work after not being paid by Debtor. SUMF # 37 [Adv. Dkt. # 835]. As a result of Debtor's actions, IRZ notified Debtor of his failure to comply with the terms of the parties' agreement. SUMF # 38 [Adv. Dkt. # 835].

Approximately halfway through construction, on or about August 3, 2017, Debtor terminated IRZ's work on the project due to lack of funding. SUMF # 39 [Adv. Dkt. # 835]. IRZ remained on the project to wind down its services for roughly two weeks after the contract was terminated and provided no further services to Debtor. SUMF # 40 [Adv. Dkt. # 835].

Debtor continued to design, build and operate the dairy without IRZ's involvement up until Debtor filed for bankruptcy. SUMF # 41 [Adv. Dkt. # 835]. In doing so, Debtor made significant and material changes from the draftsman drawings that had been drafted by IRZ under Debtor's direction. SUMF # 41 [Adv. Dkt. # 835]. These changes were actually implemented. IRZ had no part in these changes and revisions and was unaware that they were made after IRZ was terminated from the project. SUMF # 41 [Adv. Dkt. # 835].

Soon after Debtor began operations, he repeatedly violated the terms and conditions of the Confined Animal Feeding Operation and was shut down by the State of Oregon. SUMF # 42

[Adv. Dkt. # 835].

On September 25, 2017, IRZ recorded a construction lien against Lost Valley Farm for the principal sum of $393,476.81. SUMF # 43 [Adv. Dkt. # 835]. On November 2, 2017, IRZ filed a complaint in Oregon Circuit Court for foreclosure on the construction lien. SUMF # 44 [Adv. Dkt. # 835].

At no point during the construction, or after Debtor completed building the dairy without IRZ's assistance as project manager, did Debtor ever complain about the quality of IRZ's work or allege any defects associated with the construction or operation of the dairy. SUMF # 45 [Adv. Dkt. # 835].

**B.     The Bankruptcy**

On April 26, 2018, Debtor filed Chapter 11 bankruptcy. Voluntary Petition [Bky. Dkt. #1]. Debtor did not schedule IRZ as a creditor on its schedule F. Schedule F [Bky. Dkt. #507].

On June 4, 2018, IRZ filed Proof of Claim 19-1 (the "IRZ Claim"). The IRZ Claim is secured in the amount of $347,057.56, with attorney fees and interest continuing to accrue. The claim arises out of IRZ's mechanic's lien against the Lost Valley Farm. SUMF 46 [Adv. Dkt. # 835].

On July 13, 2018, the United States Trustee filed a motion to appoint a Chapter 11 trustee, or in the alternative, to dismiss the case. Motion to Appoint Trustee [Bky. Dkt. #524]. After litigation, the Bankruptcy Court issued a decision finding that, due to Debtor's drug use, gambling, and violations of the Bankruptcy Code, "te Velde is unwilling, or unable, to comply with his duties as a fiduciary." Memorandum Decision on Motion to Appoint Trustee [Bky. Dkt. #799 at p.5]. On that basis, the Bankruptcy Court entered an order appointing a Chapter 11 trustee on September 12, 2018. Order on Motion to Appoint Trustee [Bky Dkt. # 801]. Trustee was appointed as Chapter 11 Trustee on September 27, 2018. Notice of Appointment, Bky. Dkt. # 876.

Trustee proceeded to liquidate the assets of the estate. This resulted in the 2019 sale of the Lost Valley Farm's cattle, and then of Lost Valley Farm and the real property on which it sat. Afterwards, the other farming operations of Debtor were also sold. See Reports of Sale [Bky. Dkt.

Miller Nash LLP
Attorneys At Law
Portland

- 8 -     OBJECTION TO REPORT AND RECOMMENDATION

4902-7405-2233.4

# 1352, 1709, 1785, 2003, 3091].

On March 25, 2019, the Bankruptcy Court entered a stipulated order which provides that the Trustee will hold $943,761.80 in funds from the sale of Lost Valley Farm in a segregated account. These funds constitute adequate protection for IRZ on the IRZ Claim, along with providing adequate protection to other creditors of Debtor with liens on Lost Valley Farm. Stipulated Order [Bky. Dkt. # 1799].

On November 25, 2019, the Bankruptcy Court confirmed the operative Chapter 11 Plan of Reorganization dated August 5, 2019, as modified September 17, 2019, and November 15, 2019 (the "Chapter 11 Plan"). Order Confirming Plan [Bky. Dkt. #2975]. The Chapter 11 Plan treats the IRZ Claim as a fully secured claim to be paid on the proceeds of the sale of Lost Valley Farm, but only to the extent it is allowed. Chapter 11 Plan § 2.11 [Bky. Dkt. # 2975].

On February 21, 2023, the Final Decree was entered and the bankruptcy case closed. Final Decree [Bky. Dkt. # 3361].

**C.   The Adversary Proceeding**

On March 8, 2019, Trustee filed this adversary proceeding. Complaint, [Adv. Dkt. #1]. The operative FAC brought claims against IRZ and Lindsay Corporation ("Lindsay Corp.") for (1) Objecting to Claim; (2) Breach of Contract; (3) Negligence; and (4) Avoidance of Fraudulent Transfer. FAC ¶¶ 43-66 [Adv. Dkt. #533]. IRZ has generally denied the allegations of the FAC. Answer [Adv, Dkt. # 606].

Trustee filed a motion for partial summary judgment as to IRZ. In it, Trustee requested the Bankruptcy Court grant summary judgment on the first cause of action for claim objection on the basis that IRZ acted as an unlicensed contractor. First Motion for Partial Summary Judgment, [Adv. Dkt. #424]. After briefing, the Bankruptcy Court entered a report and recommendation to deny the motion. Prior Report and Recommendation [Adv. Dkt. #554]. This report remains pending with this Court.

Trustee filed a second motion for partial summary judgment as to IRZ. In it, Trustee sought partial summary judgment that the limitations of liability clauses in the Work Order and Services Agreement were unenforceable. Second Motion for Partial Summary Judgment [Adv.

Dkt. #440]. After briefing, the Bankruptcy Court entered a report and recommendation to grant the motion solely as to the claims for breach of contract, but deny it as to the negligence cause of action. Second Prior Report and Recommendation [Adv. Dkt. #556]. This report remains pending with this Court.

IRZ then filed the Motion for Summary Judgment out of which the Report and Recommendation arises. After briefing and hearing, the Bankruptcy Court issued the Report and Recommendation. As to the first cause of action, for Objection to Claim, and the fourth cause of action, for Avoidance of Fraudulent Transfer, Trustee conceded in its opposition that summary judgment was appropriate, and the Bankruptcy Court granted partial summary judgment. Report and Recommendation, pp.8:24-9:5. As to the other two causes of actions, the Bankruptcy Court concluded that disputed material facts exist as to IRZ and denied summary judgment (with a sole exception as to granting judgment that IRZ was not responsible for the negligence of third parties). Report and Recommendation, p.18:5-21. However, as to defendant Lindsay, the Bankruptcy Court ruled that there was no material dispute that Lindsay was not a party to the Work Order or Services Agreement and not otherwise liable for IRZ's debts. Summary judgment was thus granted as to all causes of action as to Lindsay. Report and Recommendation, pp.20:11-26:4.

## III. ARGUMENT

**A.     The Second Cause of Action for Breach of Contract**

In the Motion for Summary Judgment, IRZ presented two separate grounds for granting summary judgment on the breach of contract claim. First, IRZ showed that it was excused from performance due to the Debtor's breach of contract. MPA, pp.17:23-19:26 [Adv. Dkt. #834]. Second, IRZ showed that the Services Agreement did not require IRZ to perform and design or engineering work, and thus there was no breach. MPA, pp.19:28-20:18 [Adv. Dkt. #834]. The Bankruptcy Court erred in rejecting each argument.

    **1.     The Failure to Pay IRZ Excused Performance**

IRZ argued in the Motion for Summary Judgment that any obligations it had under the Services Agreement were excused once Debtor breached its obligations under the Services

Agreement, namely to continue to pay IRZ. SUMF # 39 [Adv. Dkt. # 835]. Indeed, Debtor terminated IRZ's work on the project due to lack of funding. SUMF # 39 [Adv. Dkt. # 835]. Once Debtor breached his obligations under the Services Agreement, IRZ's duty to perform services was discharged. *Holland Devs., Ltd. v. Manufacturers Consultants, Inc.*, 81 Or. App. 57, 65 (1986).

IRZ further provided factual and unrebutted evidence that this termination occurred no later than August 3, 2017. SUMF # 9, 39 [Adv. Dkt. # 835]. IRZ had no obligation to provide any further services past that date. The Bankruptcy Court agreed with these general principles, but denied summary judgment based on the perfunctory analysis that "it is [] unclear as to whether any obligations which did exist had already gone unfulfilled at the time Te Velde ceased paying IRZ." Report and Recommendation p.12:7-12. On that basis, the Bankruptcy Court concluded that material facts needed to be resolved at trial.

The record does not support this conclusion. The Trustee's complaint asserts damages for the alleged failure of the waste management system for Lost Valley Farm. FAC ¶¶ 32, 38 [Adv. Dkt. #533]. It is undisputed that this system was incomplete at the time the Services Agreement was terminated. Debtor completed the waste management system on its own and with its own design modifications after the Services Agreement had been terminated. SUMF # 41 [Adv. Dkt. # 835]. Further, IRZ was not charged with actually designing the waste management system. Rather, Debtor chose another entity, Fazio Engineering, to do it instead. Downey Deposition, vol. III, at 35:7-25 (Ex. M) [Adv. Dkt. #837]. The Trustee provided no evidence to rebut these facts. Accordingly, the undisputed facts were that the waste system was not complete at the time IRZ's duties were discharged.

### 2. The *Shelter Products* Case Requires the Additional Step of Opportunity to Cure, Which Was Denied

Further, the Bankruptcy Court's analysis falls short as the Bankruptcy Court did not consider the Oregon case *Shelter Products* case cited by IRZ. This case expressly provides that a contractor is not liable for any contractual breach regarding performance of work if the contractor is terminated without cause, unless the contractor is granted the opportunity to cure its work.

In *Shelter Products*, the owner of a project terminated a contractor under a "termination for convenience" provision in the operative contract. *Shelter Prods.*, 257 Or. App. at 386. "[A] termination for convenience clause in a contract generally gives a party the right to terminate at will, assuming no bad faith or abuse of discretion." <u>Conway Constr. Co. v. City of Puyallup</u>, 197 <u>Wash. 2d 825, 830 (2021)</u> (cleaned up); *see* <u>John Reiner & Co. v. United States</u>, 325 F.2d 438, <u>442 (Ct. Cl. 1963)</u>. A termination for convenience provision permits an owner to unilaterally cancel its contractual obligations and avoid committing a breach of contract which would expose it to damages, such as expectation damages or reliance damages. See <u>§ 5:268</u>. § 14.4.1—Debtor's right to terminate for convenience (risk allocation), <u>2 Bruner & O'Connor Construction Law § 5:268</u>. The *Shelter Products* court held that "where a party has terminated a contract for convenience, that party may not then counterclaim for the cost of curing any alleged default." *Shelter Prods*, 257 Or. App. at 402. The reasoning behind this is, in part, that once the contractor is terminated "there has been no opportunity to inspect and cure." *Id.* at 398. Thus under *Shelter Products*, even if some work was completed pre-termination, performance remains excused unless the contractor is provided with notice and opportunity to cure the work.

   Here, Debtor instructed IRZ to cease work due to a lack of funds. SUMF # 39 [Adv. Dkt. # 835]. This was undoubtedly a termination, though one done without cause and without contractual justification. As a result of Debtor's termination, IRZ ceased all work on the project. SUMF # 40 [Adv. Dkt. # 835]. Debtor did not notify IRZ of any allegedly defective work, and did not provide IRZ an opportunity to correct any allegedly defective work. SUMF # 45 [Adv. Dkt. # 835]. If the termination of a contract under a contractual provision allowing the developer to do so excuses liability, it is incongruous to state that a termination of the contract without any contractual or legal right to do does not also excuse liability.

   The Trustee attempted to distinguish *Shelter Products* case by asserting that "in stark contrast to the terminated subcontractor in *Shelter Products*, Defendants here have absolutely no basis for arguing that IRZ was in any way deprived of the opportunity to inspect and cure." Opposition, p.14:27 at 15:2 [Adv. Dkt. # 869]. That is not the holding of *Shelter Products*. The *Shelter Products* court made clear that termination for convenience itself deprives the party of the

right to inspect and cure its work, stating that "when there is a termination for convenience, [as opposed to] a termination for cause, there [has] been no opportunity to inspect and cure." *Shelter Prods.*, 257 Or. App. at 398. This is true because when the contract is terminated, the result is that the contractor is "required [] to immediately stop work with no opportunity to inspect and cure." *Id*. at 401. Unless termination is for cause, the contractor is not liable because the contractor is deprived, of no fault of its own, of this right to fix or finish its as-yet incomplete work. That is what occurred here.

Further, even assuming here that the right to demand inspection and cure identified defects had existed post-termination, Debtor did not exercise it. At no point during the construction, or after Debtor completed building the dairy without IRZ's assistance as project manager, did Debtor ever complain about the quality of IRZ's work or allege any defects associated with the construction or operation of the dairy. SUMF # 45 [Adv. Dkt. # 835]. As IRZ was terminated from its duties, without cause, without any indication of dissatisfaction with the work, and without any request for IRZ to complete or correct previously performed work, IRZ cannot be charged for any pre-termination contractual breach.

Finally, Debtor significantly modified the project after the Services Agreement was terminated. SUMF # 41 [Adv. Dkt. # 835]. IRZ cannot be charged with failing to cure work it did not perform, or which was significantly modified after it performed the work. For all these reasons, *Shelter Products* calls for summary judgment on this cause of action.

    **3.**    **Even if Performance Was Not Excused, the Scope of the Services Order was on a "Time and Materials Basis"**

Even if performance was not excused, judgment is still appropriate as Trustee failed to provide evidence that IRZ requested and paid for engineering work be performed. Trustee does not contend that IRZ failed to perform work at all, or even that it failed to perform work up to the standards of the contract. Rather, Trustee asserts that IRZ was required to perform design and engineering services under the Services Agreement, but breached when it failed to do so. Opposition pp.14:23‒16:21 [Adv. Dkt. # 869].

This is a misreading of the Services Agreement. It is undisputed that Debtor acted as the

general contractor under the project and that IRZ acted as Debtor's agent. SUMF ## 10, 24 [Adv. Dkt. # 835]. It is also undisputed that the Services Agreement set out a compensation model familiar to most lawyers: "Service charges for this project will be based on Agreed Lump Sum or Time and Materials". Ex. B. to Downey Decl. at 12 [Adv. Dkt. # 837].[2] Payment was not contingent upon completion of all identified services, but rather "for the services provided" by IRZ, as directed by its principal, the Debtor, on an hourly rate basis. Ex. B to Downey Decl. at 12 (Ex. M) [Adv. Dkt. # 837].

This was not a flat-fee arrangement under which all the described Scope of Work must be completed, but rather an hourly one. Further, it is one where IRZ was designated as an agent of the Debtor. Ex. B to Downey Decl. at 10 (Ex. M) [Adv. Dkt. # 837]. And like all hourly arrangements, the principal decides what specific work its agent will perform and when, or whether, to exclude a task as not worth the cost. This is reflected in the language of the Services Agreement, which provides that the obligations listed are not mandatory, but instead "[t]he duties of [IRZ] may include but are not limited to" the obligations set forth in the Scope of Work. Ex. B to Downey Decl. at 2; see also Ex. B to Downey Decl. at 1.

It is *undisputed* that Debtor never requested that IRZ design the waste management system. SUMF # 45. Even though IRZ had agreed it *could* do that work, Debtor chose another entity, Fazio Engineering, to do it instead. Downey Deposition, vol. III, at 35:7-25 (Ex. M) [Adv. Dkt. # 837]. IRZ, working on an hourly basis under Debtor's direction, properly followed Debtor's instructions when he chose not to incur the expense of certain tasks. Simply put, if the general contractor for the project does not request that engineering services be provided, IRZ, as his agent, has no authority to go ahead and perform engineering services and then demand to be paid for them. IRZ certainly had no contractual obligation to do so.

**B.     The Third Cause of Action for Negligence**

For the third cause of action for negligence, IRZ again made two principal arguments on

---

[2] See also Ex. B to Downey Decl. § 10 [Adv. Dkt. # 837]("For the services provided by [IRZ] under the Scope of Work, Owner shall compensate [IRZ] in accordance with [IRZ's] standard hourly rate schedule attached herein, plus expenses").

which summary judgment was not granted. First, that Trustee failed to establish any duty of care outside of alleged contractual breaches. MPA pp.20:27-22:21. Second, that any liability is limited to $500,000 under the limitation of liability clause in the Services Agreement. MPA pp.24:15-25:28.

### 1. Trustee Failed to Establish Negligence

The Bankruptcy Court erred in concluding that there were disputed issues of fact as to negligence. "Obligations specified in the terms of a contract are 'based on the manifested intention of the parties to a bargaining transaction,' while obligations in tort, or 'duties,' are 'imposed by law—apart from and independent of promises made and therefore apart from the manifested intention of the parties—to avoid injury to others.'" *Abraham v. T. Henry Const., Inc.,* 230 Or. App. 564, 568 (2009), *aff'd on other grounds,* 350 Or. 29 (2011) *quoting Conway v. Pacific University,* 324 Or. 231, 237 (1996). "A contract details the specific obligations that each party agrees to undertake with respect to the other and, if one party fails to meet an obligation, that breach results in contract liability. . . That is so whether the breach of contract was negligent, intentional, or otherwise." *Georgetown Realty v. The Home Ins. Co.,* 313 Or. 97, 106, 831 (1992). Accordingly, the Trustee may not rely on his arguments of contractual breach to support negligence, but must instead point to evidence showing an actual breach of a duty of care outside the contract.

The Bankruptcy Court first found that disputed issues of fact exist because "Defendants' acts or omissions damaged Plaintiff's property to the point that the state of Oregon required Te Velde to perform expensive clean-up operations." Report and Recommendation p.16:20-22. Trustee may have alleged this, but he provided no supporting evidence to support it. No percipient witness or expert is cited in Trustee's opposition for the proposition that IRZ performed work in a negligent manner.

The sole evidence trustee cites is an expert report of Jesse D. Frederick. Opposition at 25:1-4 [Adv. Dkt. # 869]. "Expert reports are hearsay and not admissible unless the proponent is able to provide a basis for an exception to the hearsay rule." *Escobar v. AirBus Helicopters SAS,* 2016 WL 6024441, at *1 (D. Haw. Oct. 4, 2016); *see also Alexie v. United States*, 2009 WL

160354, at *1 (D. Alaska Jan. 21, 2009) ("The reports are out-of-court statements by witnesses offered for their truth and so fall within the definition of hearsay in Fed.R.Evid. 801"). Mr. Frederick's report is not supported by any declaration of Mr. Frederick, or any other evidence that would render it admissible. Ex. 9 to Clark Decl. As IRZ objected to it, the Bankruptcy Court could not consider it. Fed.R.Evid. 801.

Accordingly, this report, by itself, is not a basis to create a disputed material fact regarding negligence. No other evidence of negligence outside of alleged contractual breaches was presented. The record is bare of evidence to sustain the Bankruptcy Court's finding of disputed issues of fact.

### 2. The Bankruptcy Court's Analysis of the Limitations of Liability Clauses Was Incorrect

The Services Agreement includes a limitation of liabilities clause, stating that "[u]nder no circumstances shall that amount exceed $500,000 or the amount of ICD's fees, whichever is lower." SUMF # 14 [Adv. Dkt. # 835]. In ruling on Trustee's first motion for partial summary judgment, the Bankruptcy Court concluded this clause applied solely to negligence claims (the "Prior Report and Recommendation"). However, the Bankruptcy Court then denied Trustee's request for summary judgment that the limitations clause was unenforceable. Prior Report and Recommendation [Adv. Dkt. #556].

In the Motion for Summary Judgment, IRZ sought to extend this ruling to its natural conclusion that the limitations clause is in fact enforceable as to the negligence claims. The Bankruptcy Court denied relief, simply stating that the parties should refer to the Prior Report and Recommendation and that "[t]hose disputed issues of material fact are no less germane to the Defendants' position than they were to the Plaintiff's." Report and Recommendation p.20:3-4. The Prior Report and Recommendation, and the facts before the Bankruptcy Court in this motion, do not support such a conclusion.

In the prior report and recommendation, the Bankruptcy Court first considered Trustee's argument that public policy prohibited the release at issue as the contract affected public welfare. The Bankruptcy Court found it did not, stating that "nothing in the Work Order or the Contract

suggest that Defendant's agreements with Debtor were anything other than two commercial businesses entering into commercial agreements. There is no evidence Defendant has a duty of public service to either the State of Oregon or Plaintiff." Prior Report and Recommendation p.21:5-9 [Adv. Dkt. # 556]. The Bankruptcy Court instead found that "[o]n this record, public policy does not appear to be implicated that would prevent Defendant from limiting liability for its own negligence." Prior Report and Recommendation p.21:12-14 [Adv. Dkt. # 556].

At summary judgment, the burden was on Trustee to introduce evidence that a contract clause term is unenforceable. *Livingston v. Metro. Pediatrics, LLC*, 234 Or. App. 137, 151 (2010) ("The party asserting unconscionability bears the burden of demonstrating that the provision in question is unconscionable"). Trustee introduced no evidence in opposition to the Motion for Summary Judgment to show that public policy somehow overrode an otherwise valid contract provision. Virtually all construction projects involve some type of licensing and permits. If the pulling of a permit or a potential for a regulatory violation rendered a limitation of liability clause, it would turn upside Oregon's policy that "Oregon courts are reluctant to declare contractual provisions per se unconscionable, even among parties of unequal bargaining power." *Id*. at 152. This argument fails as a matter of law.

The Bankruptcy Court then considered Trustee's argument that the clause was unenforceable on the grounds that IRZ was not a licensed contractor. The Bankruptcy Court found that the "evidence seems to prove that IRZ Consulting, LLC has been licensed by the Oregon Construction Contractors Board ('CCB') since 2011." Prior Report and Recommendation pp.23:27-24:1 [Adv. Dkt. # 556]. This was correct, as IRZ is and, for all operative periods, was in fact licensed for the operative period. License Report (Ex. C) [Adv. Dkt, # 837]. No evidence rebuts this. This argument equally fails.[3]

Finally, Trustee argues that clause was unenforceable under the doctrine of unconscionability. This is a high bar, as "so long as the parties have expressed their intent with

---

[3] The Bankruptcy Court did find disputed issues of material fact as to whether defendant Lindsay required a license, under Trustee's theory that ICD was actual a DBA of Lindsay, not IRZ. Prior Report and Recommendation pp.24:11-25:17. [Adv. Dkt. # 556]. As Lindsay is dismissed from this action on other grounds, this determination is not relevant here.

reasonable clarity, contractual immunity from a party's own negligence can be a matter for negotiation." *Certain Underwriters at Lloyd's London v. TNA NA Mfg., Inc.*, 372 Or. 64, 72 (2024) (internal quotations and citations omitted); *see also Abraham v. T. Henry Const., Inc.*, 350 Or. 29, 40 (2011) ("Parties may limit tort remedies by defining their obligations in such a way that the common law standard of care has been supplanted"). To prove unconscionability, a party must show both inequality in bargaining power that deprives one party "of real opportunity to negotiate the terms of the contract" along with "terms were hidden or obscure from the vantage of the party seeking to avoid them." *Bagley v. Mt. Bachelor, Inc.*, 356 Or. 543, 555 (2014).

The Bankruptcy Court, in the Prior Report and Recommendation, concluded that "[t]here is a genuine issue of material fact as to whether the limitation of liability provisions are conspicuous, called to the other party's attention, or bargained for." Prior Report and Recommendation p.32:20-22 [Adv. Dkt. # 556]. However, the Bankruptcy Court did not identify those facts and none exist on the record.

The terms of the Work Order and the Services Agreement were negotiated between IRZ and Debtor directly. SUMF # 3 [Adv. Dkt. #865]. Debtor was a sophisticated commercial businessman who developed and operated three other dairy farms at the time of negotiation. The clauses limiting liability are conspicuously stated in the agreement with highlighted boldface indicating the subject of this clause is the liability of IRZ. SUMF # 7, 14 [Adv. Dkt. #865].

Further, this clause was a necessary and material portion of IRZ's consideration, as IRZ needed to limit its liability to a reasonable amount given the scope of its work versus the size of the project. SUMF # 15 [Adv. Dkt. #865]. This transaction was part of a $60 million purchase of the Lost Valley Farm, along with an intended equally expensive investment in the conversion of the Lost Valley Farm to a functioning dairy farm. IRZ had every right, in a project of this scope, to state that there was a limit to the risk it would undertake in tort liability as a mere program manager, especially given that much of the work was out of IRZ's control and Debtor expressly considered and decided against engaging IRZ as general contractor. If Debtor did not have sophisticated legal counsel reviewing and advising him on this provision, that is the fault of Debtor, not IRZ.

The Trustee failed to rebut these points. The Trustee asserted that the limitation of liability clause was never specifically discussed with Debtor in negotiations and that no specific discount was negotiated in exchange for the limitation clause. Opposition pp.25:22-26:7 [Adv. Dkt. #869]. Neither of these arguments demonstrate inequality or surprise, nor does Trustee cite a single authority that supports his arguments that these met the doctrine of procedural inequality. If true, every single contract clause would be unenforceable unless it was documented that the term was specifically discussed and a specific price was given to it. This is not how contracts are negotiated. The undisputed material facts clearly show that the Services Agreement does not meet the standard for unconscionability.

## IV.  CONCLUSION

For the reasons set forth above, this Court should, in adopting its final order, modify the Report and Recommendation to (i) grant summary judgment on the second cause of action for breach of contract; (ii) grant summary judgment on the third cause of action for negligence; and (iii) find that the limitations of liability clause limits liability on negligence to $500,000.

Dated: January 21, 2026    MILLER NASH LLP

By: */s/ Kyle D. Sciuchetti*
    Kyle D. Sciuchetti, OSB No. 965705, admitted *pro hac vice*
    Bernard Kornberg, CSB No. 252006
    Benjamin P. Tarczy, CSB No. 308367
    Hagop T. Bedoyan, CSB No. 13285

Attorneys for IRZ Consulting, LLC and Lindsay Corporation

**PROOF OF SERVICE**

I, Bernie Kornberg, declare:

I am a citizen of the United States and employed in San Francisco, California. I am over the age of eighteen years and not a party to the within-entitled action. My business address is 340 Golden Shore, Suite 450, Long Beach, California 90802.

On January 21, 2026, I electronically filed the attached document:

**IRZ CONSULTING, LLC'S OBJECTION TO THE BANKRUPTCY COURT'S REPORT AND RECOMMENDATION REGARDING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND/OR PARTIAL SUMMARY JUDGMENT**

with the Clerk of the court using the CM/ECF system which will then send a notification to each registered user in the case.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on January 21, 2026, at San Francisco, CA.

*/s/ Bernie Kornberg*
Bernie Kornberg