**WANGER JONES HELSLEY PC**
Riley C. Walter #91839
Kurt F. Vote #160496
265 East River Park Circle, Suite 310
Fresno, California  93720
Telephone:    (559) 233-4800
Facsimile:    (559) 233-9330
Email:        rwalter@wjhattorneys.com
              kvote@wjhattorneys.com

**ZUCKERMAN SPAEDER LLP**
Carl S. Kravitz, *pro hac vice forthcoming*
R. Miles Clark, *pro hac vice forthcoming*
1800 M Street, NW, Suite 1000
Washington, DC 20036
Telephone:    (202) 778-1800
Facsimile:    (202) 822-8106
Email:        ckravitz@zuckerman.com
              mclark@zuckerman.com

Attorneys for: Plaintiff RANDY SUGARMAN, Liquidating Trustee

## UNITED STATES DISTRICT COURT

## EASTERN DIVISION OF CALIFORNIA

## FRESNO DIVISION

| | |
|---|---|
| In re<br><br>GREGORY JOHN TE VELDE,<br><br>     Debtor.<br><br>RANDY SUGARMAN, Chapter 11 Trustee,<br><br>     Plaintiff,<br><br>     v.<br><br>IRZ CONSULTING, LLC aka IRC CONSTRUCTION DIVISION, LLC,<br><br>     Defendants.<br><br>AND RELATED THIRD PARTY COMPLAINT AND CONSOLIDATED ACTIONS. | **District Ct. Case No. 19-cv-00520-KES**<br><br>Bankruptcy Case No. 18-11651-A-11<br><br>Chapter 11<br><br>Adv. Pro. No. 19-01033-B<br><br>DCN: MNG-5<br><br>**PLAINTIFF'S RESPONSE TO IRZ CONSULTING, LLC'S OBJECTION TO THE BANKRUPTCY COURT'S REPORT AND RECOMMENDATION REGARDING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND/OR MOTION FOR PARTIAL SUMMARY JUDGMENT** |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ 4

    A.   IRZ Is Not Entitled to Summary Judgment on Plaintiff's Breach of Contract Claim............. 4

        1.   The Debtor's Subsequent Inability to Pay for IRZ's Services Does Not Excuse IRZ's Prior and Continuous Breaches of the Design, Engineer, and Project Management Services Agreement. ................................................................................................................. 5

        2.   The *Shelter Products* Case Does Not Support IRZ's Position. ............................................ 6

        3.   The Design, Engineer, and Project Management Services Agreement Required IRZ to Perform Specified Design and Engineering Tasks. ................................................................ 8

    B.   IRZ Is Not Entitled to Summary Judgment on Plaintiff's Negligence Claim. ....................... 8

        1.   There Is Ample Evidence of IRZ's Negligence. ....................................................................... 8

        2.   Enforceability of Limitation of Liability Clauses ................................................................. 10

CONCLUSION .............................................................................................................. 11

# TABLE OF AUTHORITIES

**Cases**

*Competitive Techs., Inc. v. Fujitsu Ltd.*,
    333 F. Supp. 2d 858 (N.D. Cal. 2004) .......................................................................... 9

*Estate of Sanchez v. Cnty. of Stanislaus*, No. 1:18-CV-00977-ADA-BAM,
    2023 WL 7612399 (E.D. Cal. Nov. 14, 2023).................................................................. 9

*Shelter Products, Inc. v. Steelwood Construction, Inc.*,
    307 P.3d 449 (Or. App. 2013)................................................................................ 6, 7

*Wineland v. Air & Liquid Sys. Corp.*,
    523 F. Supp. 3d 1245 (W.D. Wash. 2021).................................................................. 9

Plaintiff hereby responds to IRZ's Objection to the Bankruptcy Court's recommendation that IRZ's motion for summary judgment should be denied as to Plaintiff's Second Cause of Action, for breach of contract, and as to Plaintiff's Thirds Cause of Action, for negligence.  Because none of IRZ's objections has merit, the Court should follow the Bankruptcy Court's recommendation and deny IRZ's motion as to those claims.

As to Plaintiff's contract claim, IRZ's Objection ignores black letter law holding that no breach the Debtor may have committed (due to lack of funds or otherwise) could ever operate to excuse IRZ's prior, repeated breaches of the Design, Engineer, and Project Services Agreement.  IRZ's Objection also fails to confront the actual language of the Agreement, which unambiguously (1) obligated IRZ to provide the Debtor with design and engineering services, (2) identified the specific design and engineering tasks IRZ agreed to—and the Agreement says it "shall"—perform, and (3) required IRZ to complete significant design and engineering tasks before construction of the dairy even began.  While Plaintiff believes that the Agreement's language supports entry of summary judgment *in Plaintiff's favor* on the issue of breach (*see* Doc. No. 54), at a bare minimum, and without waiver of that position, the Agreement's language alone precludes IRZ from demonstrating the absence of a genuine dispute of fact that the Agreement required IRZ to perform design and engineering services.  In any event, the Bankruptcy Court found that the Agreement is ambiguous on this issue and that such ambiguity precludes entry of summary judgment in IRZ's favor on Plaintiff's contract claim.  IRZ nowhere disputes that, if such ambiguity does exist, IRZ's summary judgment motion must be denied.

As to Plaintiff's negligence claim, IRZ's Objection ignores the mountain of record evidence showing that IRZ acted negligently and that IRZ also should be precluded from enforcing contractual limitation of liability clauses against the Debtor.

**A.  IRZ Is Not Entitled to Summary Judgment on Plaintiff's Breach of Contract Claim**

IRZ raises three separate objections to the Bankruptcy Court's refusal to recommend that summary judgment should be awarded to IRZ on Plaintiff's contract claim.  First, IRZ argues that the Debtor's inability to continue to pay for its services nearly two years into the project somehow excused IRZ's prior contract breaches.  Second, IRZ argues that an intermediate level appeals court decision

///

from Oregon mandates summary judgment in its favor.  And third, IRZ contends that the Debtor never asked IRZ to do any design or engineering work.  None of IRZ's arguments has merit.

**1.    The Debtor's Subsequent Inability to Pay for IRZ's Services Does Not Excuse IRZ's Prior and Continuous Breaches of the Design, Engineer, and Project Management Services Agreement**

IRZ contends it should be absolved of liability under the Design, Engineer, and Project Management Services Agreement because the Debtor—nearly two years into the project and after IRZ admits that construction of the dairy already had progressed more than "halfway," *see* Doc. No. 54 at 18—could no longer afford to pay IRZ's bills and therefore terminated the Agreement "no later than August 3, 2017."  Doc. No. 60 at 11.  According to IRZ, this "breach" by Debtor "excused" any and all contract breaches that IRZ may have committed.  *Id.* at 10.  That is not the law.  As Plaintiff explained before the Bankruptcy Court, it is hornbook law that one party's material breach of a contract may only excuse the other party's *future* nonperformance.  It *never* excuses the other party's *prior* breaches.  *See* Adv. Proc. Doc. No. 869 at 17-20 & n.10 (and cited authorities); *see also* Adv. Proc. Doc. No. 811 at 13-15 (and cited authorities).  That black letter principle is dispositive here.  Plaintiff's breach of contract claim is based exclusively on breaches IRZ committed *before* the Debtor terminated the Design, Engineer, and Project Management Services Agreement.  To the extent IRZ is suggesting that any "design modifications" the Debtor implemented caused the

Indeed, IRZ's failure to perform its contractually obligated design and engineering work occurred long before construction of the dairy even began.  The workflow for all 21 phases in Agreement's Scope of Work tracked the same general progression.  First, IRZ was to design and engineer specified facilities or structures (or, as to two specified infrastructure items, *oversee* the design and engineering thereof).  The designs were then to be approved by the Debtor and/or regulators.  IRZ would then make drawings ready for construction (*i.e.*, engineered drawings). Thereafter, there would be a bidding process where subcontractors would be hired to do the actual construction.  *See* Defs' Ex. B at 3-8 (Design, Engineer, and Project Management Services Agreement) (Adv. Proc. Doc. No. 837 at 11-16).  In other words, *all* of the design and engineering work IRZ agreed to perform was to be completed before construction commenced.  And, as noted above, IRZ admits that, when the Debtor terminated the Agreement nearly two years into the project, construction had not simply commenced.

The dairy was already more than halfway built. Although not specifically at issue on IRZ's motion, it prior breaches—allowing construction to start without design and engineering—caused substantial damages.

For these reasons and others, IRZ's assertions (Doc. No. 60 at 11) that the dairy's waste management system was not yet fully constructed when the Debtor terminated the Design, Engineer, and Project Management Services Agreement, and that the Debtor, himself, subsequently completed the waste management system are entirely beside the point. The Debtor did not hire IRZ to construct his dairy. He contracted with IRZ to design and engineer certain aspects of it (and oversee the design and engineering of other aspects), and, as noted, those design and engineering tasks—which IRZ freely admits it never performed—should have been completed before construction began. Subcontractors were to perform the actual construction. Nothing that the Debtor may have done *after* the Agreement was terminated excused IRZ's prior breaches.

### 2.    The *Shelter Products* Case Does Not Support IRZ's Position

IRZ's argument that the Oregon Court of Appeals decision in *Shelter Products, Inc. v. Steelwood Construction, Inc.*, 307 P.3d 449 (Or. App. 2013), calls for summary judgment in its favor because IRZ was denied an opportunity to cure (Doc. No. 60 at 11-13) is similarly without merit. Indeed, it is no surprise the Bankruptcy Court's Report and Recommendation makes no reference to *Shelter Products*, because it is entirely inapposite. That case concerned interpretation of contractual termination provisions not in the Agreement at issue here. *Shelter Products* is different in all material respects and does not bear on the motion at bar.

In *Shelter Products*, a general contractor notified a subcontractor regarding concerns with the subcontractor's work, then promptly terminated the subcontractor under a "termination for convenience" provision in the parties' contract. 307 P.3d at 451-52. That is, a termination without cause. In accordance with that contractual provision, the subcontractor immediately stopped work and left the project. *Id.* at 452. When the general contractor refused to pay the subcontractor for work performed prior to the termination, the subcontractor filed a construction lien, which it enforced in court. *Id.* at 452-53. The general contractor sought to offset costs incurred fixing the subcontractor's work, but the trial court ruled it was precluded from doing so. *Id.* at 458-59.

The Court of Appeals of Oregon affirmed. In doing so, the court contrasted the contract's termination for convenience provision with a corresponding termination for cause provision in that contract. 307 P.3d at 459-60. Under the latter provision, the general contractor was permitted to declare a breach and terminate the subcontractor if the subcontractor did not cure the breach within a reasonable time. Thereafter, the general contractor could withhold any money it owed the subcontractor until the project was completed, and the general contractor could deduct from the balance the costs of fixing the subcontractor's defective work. *Id.* The court reasoned that, while the general contractor had invoked the termination for convenience provision, it was trying to obtain remedies only available to it under the termination for cause provision. *Id.* at 460. The court determined that, under the circumstances presented, because the general contractor had not given the subcontractor an opportunity to cure, it could not offset the costs it incurred fixing the subcontractor's defective work. *Id.*

The situation presented here is different. First of all, this case does not involve the application or interpretation of any contractual termination provisions—let alone competing ones. Furthermore, it indisputably is *not* the case here that the Debtor identified defects in IRZ's work and then terminated IRZ without giving IRZ any opportunity to cure. IRZ admits that the Debtor terminated IRZ because he could no longer pay their bills. Plain and simple. The Trustee, who was appointed months after the termination, discovered IRZ's breaches after his appointment well into the bankruptcy. In any event—though no less important—IRZ cannot in good faith argue it was deprived of an opportunity to inspect and cure. IRZ's position is that there was no default to be cured. According to IRZ, it never agreed to do design and engineering work in the first place.

In short, and as summarized previously (*see* Doc. No. 57 at 12), there is nothing in the holding or reasoning of *Shelter Products* supporting IRZ's position that its prior, intentional, and uninterrupted refusal to do any design or engineering work, as required under the Design, Engineer, and Project Management Services Agreement, should be excused because the Debtor eventually could no longer pay IRZ's bills almost two years after the parties executed the contract.

///

///

///

PLAINTIFF'S RESPONSE TO IRZ CONSULTING, LLC'S OBJECTION TO THE BANKRUPTCY COURT'S REPORT AND RECOMMENDATION REGARDING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND/OR PARTIAL SUMMARY JUDGMENT

### 3. The Design, Engineer, and Project Management Services Agreement Required IRZ to Perform Specified Design and Engineering Tasks

IRZ also claims it is entitled to summary judgment because (1) the Design, Engineer, and Project Management Services Agreement only obligated IRZ to provide the Debtor with design and engineering services if the Debtor specifically requested such services and (2) the record is devoid of evidence the Debtor ever did so. Doc. No. 60 at 13-14. That position is directly refuted by the plain terms of the Agreement. Immediately after the Agreement provides that "OWNER retains ICD to perform design, engineering, and project management services, in connection with the design, engineering, and construction of The Willow Creek Dairy Construction Project as described in the enclosed Scope of Work," Defs' Ex. B at 10 (Adv. Proc. Doc. No. 837 at 18), the Agreement specifically states that "ICD *shall provide* the services set forth in the SCOPE OF WORK." *Id.* at 10, § 1.01(A) (Adv. Proc. Doc. No. 837 at 18) (emphasis added). The Agreement's Scope of Work, in turn, identifies the specific design and engineering tasks that IRZ agreed to perform. *See id.* at 2-9 (Adv. Proc. Doc. No. 837 at 10-17). Under the terms of the Agreement, the only services that were on request were those *outside* the Scope of Work, in which case there would have to be a written amendment signed by both parties or a new contract covering the additional work. *See id.* at 10, § 1.01(C) (Adv. Proc. Doc. No. 837 at 18).

## B. IRZ Is Not Entitled to Summary Judgment on Plaintiff's Negligence Claim

According to IRZ, there are no factual disputes to preclude summary judgment in its favor on Plaintiff's negligence claim or on application of contractual limitation of liability clauses to that claim. IRZ is mistaken.

### 1. There Is Ample Evidence of IRZ's Negligence

IRZ argues that the sole evidence in the record of its negligence is the report of Plaintiff's retained expert, Jesse D. Frederick, P.E., and that Mr. Frederick's report is inadmissible hearsay—because IRZ chose not to depose Mr. Frederick and because his report is not signed under penalty of perjury—and therefore insufficient to create a disputed issue of material fact regarding IRZ's negligence. Doc. No. 60 at 15-16. IRZ is wrong on both counts.

First of all, the Court most certainly can consider Mr. Frederick's report in connection with IRZ's motion for summary judgment. Mr. Frederick is a practicing engineer with more than 40 years of experience, including with large commercial dairies. Among many other opinions Mr. Frederick

expresses regarding IRZ's work, he opines that IRZ's "performance fell below acceptable standards." Pl.'s Ex. 9 at 4 (Adv. Proc. Doc No. 879 at 6). Although Mr. Frederick's expert report may "not presently [be] in evidentiary form," his "unsworn report … suffices to alert [IRZ] and the Court as to the 'availability at trial of the facts contained in [the report].'" *Wineland v. Air & Liquid Sys. Corp.*, 523 F. Supp. 3d 1245, 1250 n.2 (W.D. Wash. 2021) (quoting *Competitive Techs., Inc. v. Fujitsu Ltd.*, 333 F. Supp. 2d 858, 863 (N.D. Cal. 2004)) (considering unsworn expert reports at summary judgment stage). IRZ does not challenge the authenticity of Mr. Frederick's report; nor does IRZ point to any expert of its own who disputes Mr. Frederick's opinions. Further, IRZ chose not to depose Mr. Frederick. If it had, Mr. Frederick would have testified to his opinions and the bases for his opinions. In other words, IRZ offers no meaningful justification for why the Court should refuse to consider Mr. Frederick's report in connection with IRZ's motion for summary judgment. *See Estate of Sanchez v. Cnty. of Stanislaus*, No. 1:18-CV-00977-ADA-BAM, 2023 WL 7612399, at *8 (E.D. Cal. Nov. 14, 2023) ("[C]ourts need not exclude the expert report of a party opposing summary judgment if its only defect is the lack of a signature under penalty of perjury."); *Wineland*, 523 F. Supp. 3d at 1250 n.2 ("Where the moving party has not raised a substantive challenge to the authenticity of the reports or the predicted trial testimony of the experts, the Court has discretion to consider the reports.").

Moreover, there is substantial other evidence in the record of IRZ's negligence, which in itself is sufficient to sustain the negligence claim. Such evidence is from a number of sources, including in the deposition testimony of IRZ's own Rule 30(b)(6) designee. By way of example only, immediately after admitting that IRZ did no engineering work in connection with the dairy's massive concrete construction, IRZ's corporate designee conceded that engineering was "required for sound [concrete] construction." Pl.'s Ex. 1 at 119:16-120:9 (Adv. Proc. Doc. No. 875 at 15). In this regard, there also is deposition testimony from Joel Edmonds—the individual whom Plaintiff hired to run the dairy after he was appointed Trustee and whom Plaintiff has been designated as a non-retained expert in this litigation—that the dairy's poorly designed concrete structures—*e.g.*, barn floors, catch basins, and sand lanes—caused daily permit violations and substantially contributed to the ultimate failure of the dairy's waste management system. Pl.'s Ex. 6 at 22:4-13; 22:21-23:20; 40:1-4; 46:11-23; 47:9-50:13; 51:17-52:9; 61:9-10; 61:18-24; 74:5-20; 75:1-76:16; 77:7-9; 77:17-78:13 (Adv. Proc. Doc. No. 878 at 6-12).

As these examples demonstrate, there is ample evidence in the record of IRZ's negligence. IRZ's motion for summary judgment should be denied as to Plaintiff's negligence claim.[1]

### 2.    Enforceability of Limitation of Liability Clauses

The Bankruptcy Court correctly determined that disputes of material fact preclude summary judgment on the question of whether contractual limitation of liability clauses apply to Plaintiff's negligence claim. R&R at 20 (Doc. No. 59 at 21). As the Bankruptcy Court previously determined, in a Report and Recommendation entered on November 10, 2022, genuine issues of material fact exist with respect to "whether the limitation of liability provisions are procedurally unconscionable due to their lack on conspicuousness, and whether they were bargained for, or called to the Debtor's attention." Doc No. 36 at 33 (Adv. Proc. Dkt. No. 556 at 33). IRZ did not timely object to that ruling.

As Plaintiff explained to the Bankruptcy Court in connection with IRZ's motion for summary judgment, discovery has since uncovered additional facts bearing on the procedural unconscionability of the limitation of liability clauses at issue. For example, the record shows that (1) Fred Ziari, IRZ's founder and CEO who signed the Work Order and the Design, Engineer, and Project Management Services Agreement, did not have any discussions with the Debtor about any of the terms of either contract before the Debtor signed them; and (2) Wayne Downey, the IRZ employee who was the principal drafter of both contracts, never discussed the limitation of liability provision in the Design, Engineer, and Project Management Services Agreement with the Debtor before the Debtor signed the Agreement, and could not recall if he ever discussed the limitation of liability provision in the Work Order with the Debtor before the Debtor executed the Work Order. Pl.'s SUF ¶¶ 50, 51 (Adv. Proc. Doc. No. 909 at 52). Mr. Downey further testified that the Debtor did not receive any form of discounts from IRZ for agreeing that IRZ's liability would be limited under the Work Order and the Design, Engineer, and Project Management Services Agreement. Pl.'s SUF ¶ 52 (Adv. Proc. Doc. No. 909 at

---

[1] It is worth noting the IRZ does not object to the Bankruptcy Court's rulings that (1) under Oregon law, if there is no special relationship between the parties that defines the relevant duty of care owed, a party still owes others the duty to refrain from creating any foreseeable and unreasonable risk of legally cognizable harm, R&R at 13 (Doc. No. 59 at 14), and (2) the economic loss doctrine does not bar Plaintiff's negligence claim, *id.* at 16 (Doc. No. 59 at 17). Indeed, because IRZ acknowledges "[i]t is undisputed … that IRZ acted as Debtor's agent," Doc. No. 60 at 13-14, IRZ effectively concedes the economic loss rule does not bar Plaintiff's negligence claim as a matter of law.

52). For these reasons, a triable issue is presented as to whether the limitation of liability clauses at issue may be enforced against the Debtor.

## **CONCLUSION**

For the foregoing reasons and those set forth in Plaintiff's Objection to the Bankruptcy Court's Report and Recommendation, Plaintiff respectfully requests that the Court deny Defendants' Motion for Summary Judgment and/or Motion for Partial Summary Judgment as to Plaintiff's Second and Third Causes of Action.

Dated: February 4, 2026                          Respectfully submitted,


WANGER JONES HELSLEY PC

and

ZUCKERMAN SPAEDER LLP


                                                          /s/ Kurt F. Vote
By:_____
        Kurt F. Vote
        Attorneys for Plaintiff
        Randy Sugarman, Liquidating Trustee

**PROOF OF SERVICE**

I am a citizen of the United States and employed in Fresno County, California. I am over the age of eighteen years and not a party to the within-entitled action. My business address is Wanger Jones Helsley PC, 265 E. River Park Circle, Suite 310, Fresno, CA 93720.

On February 4, 2026, I electronically filed the foregoing **PLAINTIFF'S RESPONSE TO IRZ CONSULTING, LLC'S OBJECTION TO THE BANKRUPTCY COURT'S REPORT AND RECOMMENDATION REGARDING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND/OR MOTION FOR PARTIAL SUMMARY JUDGMENT** with the United States District Court Eastern District of California, by using the Court's CM/ECF system.

___X___ (BY CM/ECF) Upon the filing of the foregoing document with the Clerk of the Court using the CM/ECF system, a notification of such filing (NEF) will be transmitted to each registered user in the case.

___X___ (FEDERAL) I declare that I am employed in this office of a member of the bar of this court at whose direction this service was made. Executed on February 4, 2026, at Fresno, California.

/s/ Kimberley Dodd
Kimberley Dodd

{8110/227/01127895.DOCX}                    1
CERTIFICATE OF SERVICE